IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GLOBAL ARENA, LLC,**<br>      **Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **ETERPRETING, LLC, CATHERINE FOY O'DONNELL, PATRICK HANAHAN AND ROBERT BEVILACQUA, JR.,**<br>      **Defendants.** | **NO.  16-3634** |

## MEMORANDUM OPINION

Plaintiff, Global Arena, LLC, provides interpretation services to private companies, government agencies, law firms, and non-profit organizations.  Over the years it has built a comprehensive list of hundreds of interpreters which it says its former employee Defendant Catherine Foy O'Donnell stole along with other trade secrets and confidential and proprietary information to establish, along with Defendants Patrick Hanahan and Robert Bevilacqua, Jr., a competitor enterprise, Eterpreting LLC.  Defendants have filed a partial motion to dismiss the Plaintiff's claims for an accounting, for interference with prospective and existing business relations, and for civil conspiracy which motion shall be granted in part and denied in part.

I.      FACTUAL BACKGROUND

Global Arena's Amended Complaint describes how it put in significant time and resources over the course of many years to locate, screen, evaluate, orient, and reevaluate the interpreters on the list.  Given the list's potential value to a competitor, new employees are not allowed to see it until they have signed confidentiality and non-compete agreements.  Accordingly, in May 2013, when O'Donnell was hired to serve as the Project Manager for Global Arena's interpreting services department, her employment contract included both a confidentiality agreement and a non-compete agreement.  Once employed she had access to

information regarding Global Arena's customers, interpreters, translators, language programs and teaching methods, services pricing lists, trainers, teachers and consultant cost information, fees and compensation, translation and interpreting processes and techniques, as well as its practices and methods.

Five months after she was hired, O'Donnell began sending out some of that information from her Global Arena email account to her own e-mail account (a proprietary presentation concerning new interpreters and Global Arena's form interpreter and client contracts), to Hanahan's email account (a spreadsheet listing all Global Arena's active interpreters, together with those interpreters' contact information and other proprietary information), and to her father's email account (a spreadsheet that tracked new clients).

Shortly thereafter, while she was still employed at Global Arena, O'Donnell, Hanahan and Bevilacqua set up Eterpreting, LLC.  Ten days later, she gave one month notice telling her employer that she planned to pursue an unrelated business opportunity.  That business opportunity was Eterpreting, a competitive enterprise to Global Arena.  Each of the Defendants serve in key positions in that company.  O'Donnell is the Director of Interpreting & Translation.  Hanahan is the Managing Partner.  And, Bevilacqua is a Partner.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "In light of *Twombly*, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed] conduct.'" *Great W. Mining &*

*Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.   DISCUSSION

### A.  Accounting (Count Seven)

Global Arena seeks an accounting for all economic activity which Defendants engaged in pertaining to the operation of Eterpreting, LLC.   Defendants Hanahan, Bevilacqua and Eterpreting move to dismiss the claim against them for failure to state a claim under either a legal or equitable accounting theory.

A legal accounting is available only if there was a valid contract, express or implied, between the parties.  *Haft v. U.S. Steel Corp.*, 499 A.2d. 676, 677–78 (Pa. Super. Ct. 1985). None is alleged in the Amended Complaint between Global Arena, on the one hand, and Hanahan, Bevilacqua or Eterpreting, on the other, and, thus, a request for a legal accounting is unsustainable.

An equitable accounting is a <u>*remedy*</u> that is available under Pennsylvania law where the available legal remedy is not "adequate or complete."  *Williams v. Finlaw, Mueller & Co.*, 141 A. 47, 48 (Pa. 1928) (citation omitted).  It is not a claim.  Rather it is a form of equitable relief – a "demand for judgment for the relief the pleader seeks" under Rule 8(a)(3) of the Federal Rules of Civil Procedure, rather than a cause of action upon which relief could be granted.  As such, it is not the proper subject of a Rule 12(b)(6) motion which goes to the question of whether a plaintiff has failed to state a claim upon which relief can be granted.[1]  *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 (3d ed. 1998).

---

[1] Although not a claim, ¶¶ 86–87 nonetheless remain in the Amended Complaint.

Global Arena points out, in reliance on *Custis v. Serrill*, 154 A. 487 (Pa. 1931), that historically, Pennsylvania law treated an accounting as an independent action in equity. However, Pennsylvania has since abolished the separate action in equity – including an equitable accounting – as an independent cause of action, and amended its Rules of Civil Procedure to include equitable relief as a remedy.  34 Pa. Bull. 9–10, 12 (Jan. 3, 2004); Pa. R. Civ. Proc., References & Annotations, Equitable Relief, Explanatory Cmt. (2003) ("The amendments have no effect upon a party's entitlement to equitable relief.  Stated another way, a court may grant equitable relief only if a party is entitled to such relief as a matter of law.").

### B.  Interference with Existing or Prospective Contractual Relations (Count Ten)

Defendants move to dismiss count ten which, read broadly, asserts both a claim for interference with existing contractual relations, and interference with prospective contractual relations.  Both torts – set forth in Section 766 of the Restatement (Second) of Torts – are recognized in Pennsylvania.  *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 470 (Pa. 1979) (citing Restatement (Second) of Torts, §§ 766, 766B (Am. Law Inst. 1979)).

Defendants concede that the Amended Complaint contains sufficient factual matter to satisfactorily allege the existence of a contractual relationship between the Plaintiff and third parties – to wit, the interpreters, the vendors and the customers.  *Walnut St. Assoc., Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. Ct. 2009) (setting forth elements of a tortious interference claim), *aff'd*, 20 A.3d 468 (Pa. 2011).  However, nowhere in the Amended Complaint are there any allegations of fact that any of its interpreters, vendors or customers breached or failed to perform under an existing contract, a pleading requirement for a tortious interference with existing contractual relations claim.  *Dreiling Millennium Trust II v. Reliant Renal Care, Inc.*, 833 F. Supp. 2d 429, 434 (E.D. Pa. 2011) (summarizing pertinent cases and

noting that breach or nonperformance need not be permanent or complete, but must be sustained for some period). Allegations of breach or nonperformance are necessary because Section 766 imposes tort liability only for "inducing or otherwise causing the third person not to perform the contract." Restatement (Second) of Torts § 766. Given this lack of critical information, Defendants' motion to dismiss Global Arena's tortious interference with existing contractual relations claim will be granted.

Turning next to Global Arena's claim for tortious interference with prospective contractual relations, a similar problem is apparent. "In order to state a claim of tortious interference with prospective contractual relationship . . . a plaintiff has the burden of pleading and proving: 1) a prospective contractual relation; 2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; 3) the absence of privilege or justification on the part of the defendant; and 4) the occasioning of actual damage resulting from the defendant's conduct." *Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1275 (Pa. Super. Ct. 2012) (quoting *Thompson*, 412 A.2d at 471). "The plaintiff also must plead and prove a reasonable likelihood or probability that the anticipated business relationship will be consummated." *Id.* (internal quotation marks, citation and footnote omitted); *see also* Section 766B of the Restatement (Second) of Torts [2] (imposing liability only where "the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the

---

[2] There is some confusion as to whether the Pennsylvania Supreme Court in *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979), adopted Section 766B of the Restatement (Second) of Torts. Its opinion cited approvingly to Section 766B of the Restatement (Second) of Torts, which imposes liability for "improper" interference, but the Court nonetheless retained the list of elements derived from Section 766(b) of the Restatement (First) of Torts (Am. Law Inst. 1939), which imposes liability for interference with "the absence of privilege or justification." 412 A.2d at 471 (citing *Glenn v. Point Park College*, 272 A.2d 895, 898 (Pa. 1971)). In *International Diamond Importers*, Pennsylvania's Superior Court framed the elements in terms of a "lack of privilege or justification" – in line with the Restatement (First) definition – but nonetheless stated that the Pennsylvania Supreme Court had "adopted" Section 766B of the Restatement (Second). 40 A.3d at 1274. Regardless as to which version of the tort Pennsylvania has adopted, it has no impact for the purposes of the instant motion. Even under Section 766(b) of the Restatement (First) of Torts, there is no liability for interference with a prospective contractual relation unless the third party did not "enter into or continue a business relation" with the plaintiff, which is precisely the missing factual allegation here.

prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.").

Global Arena's Amended Complaint does include as exhibits lists of Global Arena's active interpreters, interpretation vendors and customers, and does generally allege that its profits and revenues have declined as a result of Defendants' conduct, but it does not set forth any facts from which it can be inferred that any interpreters, vendors, or customers with whom Global Arena had a prospective contractual relationship "did not enter into or continue" that relationship as required under Section 766B(a) of the Restatement (Second) of Torts.  Nor are there facts to suggest Global Arena was "prevent[ed] . . . from acquiring or continuing" any such relationship as required under Section 766B(b) of the Restatement (Second) of Torts.  That Global Arena's profits and revenues diminished is unavailing in light of the absence of facts that plausibly suggest that the failure of any interpreters, vendors or customers to enter into a prospective contractual relation was the cause thereof.  The failure to make even a general allegation of such facts requires dismissal, and so count ten will be dismissed in its entirety.

### C.  Civil Conspiracy (Count Eleven)

Finally, the Court addresses Defendants' motion to dismiss the civil conspiracy count against all defendants.  Their sole argument is that Plaintiffs have not alleged facts from which an agreement could be plausibly inferred between the parties – a required element of a civil conspiracy claim in Pennsylvania.  *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987–88 (Pa. Super. Ct. 1997) (citation omitted) (civil conspiracy requires that there be a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose).  A close review of the Amended Complaint illustrates otherwise.  It alleges in general terms that "there were one or more agreement(s)

amongst and/or between these parties to inflict a wrong or injury upon Global Arena," and provides the specific factual allegations that, *inter alia*: O'Donnell was bound by a non-compete agreement; that on October 14, 2013, she emailed Hanahan (with whom she had been in a romantic relationship for about a year and a half ) a spreadsheet of all Global Arena's active interpreters; that on April 22, 2014, Defendants registered the website "eterpreting.com"; that on June 16, 2014, Hanahan and Bevilacqua registered Eterpreting, LLC with the Pennsylvania Department of State Corporation Bureau; that on June 26, 2014, O'Donnell resigned from Global Arena and indicated she would be pursuing unrelated work; that Eterpreting began competing against Global Arena in "mid-late 2014"; that Hanahan and Bevilacqua identify themselves respectively as "Managing Partner" and "Partner" in Eterpreting, LLC; and that O'Donnell is the Director of Interpreting & Translation at Eterpreting. These facts, if proven true, would plausibly support a conclusion that O'Donnell and Hanahan took concerted action to acquire interpreter lists from Global Arena, and that together with Bevilacqua, they agreed to set up Eterpreting to compete with Global Arena by using the information they had gained. Accordingly, Defendants' motion to dismiss count eleven will be denied.

An appropriate order follows.

                                                          **BY THE COURT:**

                                                          **/S/WENDY BEETLESTONE, J.**

                                                          **WENDY BEETLESTONE, J.**